■»lhie/ Justice Uobkhtsok,
delivered the opinion of the court.
Tins is an action of ejectment for a lot in the town of Bardstown. By a statute of 1788 of Virginia, 100 acres of land granted to Bard and Owens, and including the lot now in controversy, were vested in trustees. In 1795, Stephen Ormsby conveyed the lot to John McAchron, who built a house upon it shortly afterwards, from which time it has been continually occupied, with the exception of one or two years prior'to 1801. In the sutnmer of the year 1807, Calais Debagneus took possession of the lot, claiming it as’his own, and died in the fall of the same year, leaving his wife in possesion of it, and who continued in the possession until 1810 or 11.
In 1796, McAchron eonveyed the lot to Ricks, who • conveyed it in 1806, to Beauchamp, who, in 1803, conveyed it to Betsey Debagneus, the widow of C. Debagneus, and who claimed it in her rigid as widow. She married John Moore in 1808, and prior to the institution of this suit, married Presly Wilhite. In 1810 or 11, when Moore and wife ceased to occupy the lot, James Winn took possession of it, and occupied it until his death in 1814. Itis widow, or those claiming under her, have occupied it ever since.
On the 3rd day of July, 1827, this suit was brought on the demise of Betsey Debagneus. On the 7th of July, 1827, the declaration was amended, by inserting a new joint and several demise by Wilhite and wife, Stephen Ormsby, John McAchron and John Ticks. At the March term, 1828, Mary Winn was made defendant, and pleaded the general issue. At the June term, 1828, a verdict was returned against her, but the court awarded a new trial; and, at the same term, a new demise in the names of the trustrees of Bards-'town was inserted in the declaration. At the September term, 18.28, another verdict was found for the lessors, and another new trial was granted by the court; and at the next succeeding term a third verdict having been returned for the. lessors, ibb ' *522 court overruled a motion for a new trial, and pro- . nouncedi udgment on the verdict.
Court will consider additional de •unless ed to iu a the dourt below,
As a legal conclusion from the foregoing facts, which constitute the substance of all the evidence in the case, we should here simply affirm the judgment of the circuit court, without noticing any of the objections urged by the plaintiff in error, if some of them had not been presented with unusual zeal and confidence. We therefore, deem it proper to notice, very briefly,-, these objections in their numerical order-
1st. The counsel earnestly insist that the circuit committed a fatal error, in allowing the last demise in the name of the trustees. We are fully await: of all the authorities on this point, and we admit that recor^ had shofrn, as it does not, that the plaintiff in error opposed the amendment, and never m any way acquiesced in it, the objection now made might be sustainable. But no objection seems to have been made to the new demise, and we infer, that the amendment was made witn the assent of the plaintiff. If she had, in form, taken issue on the last demise, as she had done on a previous one which had been inserted as an amendment, there could be no doubt that she would thereby have waived all available objection. She did not, it is true, file another plea of not guilty, after the last demise had been added; but, she went to trial on the whole declaration, without reservation or exception. The jury was sworn to try the issue, and did try it. The legal deduction from these facts, is, that the plea of not guilty, was intended and understood by the parties to apply to the whole declaration, as it was when the jury was sworn to try the issue, and that, therefore, the issue was on all the demises. See Taylor vs. Whiting et al. IV Monroe, 365.
The 1st objection is, therefore, untenable.
2nd. In the progress of the trial, the circuit count .refused to instruct the jury, that the possession from 1801, barred any right of entry by the lessors; but instructed them, that if they believed that the plaintiff in error, and those under whom she claimed, had held the lot adversely to the lessors, for twenty years without interruption, they should find for her. And this furnishes the ground of the 2nd objection.,
Trespasser without color °n]ycuunthis own possession, and can-h°msdf °4th any prior posscssor. Prior ütleuTear ° in{f) wliTsustain verdict in ejectm°ut.
-phe law presumes the possession to be thecal title: unless contraryaivear'
The evidence sustains the court in overruling the instruction asked for. There is not a particle of testisnonj tending in any degree to prove that the tiff in error held adversely to any of the lessors; and the instruction, as drawn, is based on the hypothesis, that she had so held.
The record does not intimate that she or her husband had the color of title. The legal inference is, therefore, that they were trespassers without claim of right, or held under the title of the trustees. See Fowke vs. Darnel, V Littell, 316; Jackson vs. Sharp, IX Johnson, 163; Jackson vs. Waters, XII 1b. 365.
If they were trespassers without color of title, the plaintiff was not protected by adverse possession. Indeed, she could be benefited by no other possession than that of her husband and herself, and that did not commence sooner'than 1810, and had not, consequently, been continued for twenty years. And the former possession of Mrs. Wilhite, under claim and color of title, would, alone authorize a recovery on her demise, See Fowke vs. Darnel, supra. But without any evidence to the contrary, the law presumes that the possessionof the plaintiff was held in subordination to the legal title, and therefore, to that of the trustees, because there is no proof of a legal title elsewhere than in them. And consequently, there can be no doubt, that as there was no proof of a possession adverse to the title of the trustees, there ought to have been a ■verdict against the plaintiff on the demise by them; and of course, the circuit court did not err in holding the instruction asked for, nor in giving that which was substituted.
There is no proof that Ormsby’s claim was adverse, to that of the trustees; the legal presumption is, therefore, that he held under their title. There is no iq$imation that the defendant held under Ormsby; but if there had been proof that she did, she could not be considered as-holding adversely to the title of the trustees, because; he-held under them, as we are bound to infer; and they never had conveyed the title to him or to any other person.,
But if there- had been proof that the plaintiff held under MeAohron,.and if, in consequence of Ormsby’s ¿feed, Mc-Achron held adversely to the trustees, even *524 then the circuit court would not have erred in withholding the instruction proposed. The jury had a right to infer, that Winn entered under Mrs. T)ebagneus, alias Moore, alias Wilhite: And then the plaintiff would be eslopped'to deny the title of Wilhiteand wife, and so there would be an end'of the controversy-If Winn entered ■ under the dairaheld by. Ormsby, he could not have Jield- adversely to- the claim of Mrs»Wilhite, because hr, never had,-, and she had a conveyance of the right of Ormsby; and, therefore, in this’ aspect of the case, there should have been a’ recovery on the demise by Wilhite and wife; and the proposed instruction oughtnotto have been given. Noroughtitto have been given even if there had been any evidence tending to provefhat the plaintiff held adversely to all the lessors, in. that event she could not shew twenty years adverse possession. The adverse possession: could not have commenced before 1810, and the last demise, in the name of the trustees, was inserted in-1828, and'the trial on it was in 1829.
Party estopped from conírovertinf¡:.tlie title under which .ha en,-
Tewnty years possession, to bar a right of entry, need not be by the. same person or under the iamo right; but it 'Aiust’b'e uninterruptedly adverse,, and when held by different persons a privity must have existed between, them..
Twenty years possession cannot bar a right of entry,, unless it has been uninterruptedly adverse to that right. It is not necessary that it should have continued in one person, or in the same right. But it must have been adverse throughout, and when held by different persons,, there must be some-privity between them. Th.'s, if A, who basan elder patent, occupied his land ten years, and II, who has a junior grant for the .same land, entered as-soon as A-abandoned the possession, and occupy it adversely for ten years-more, A’s right of entry would not be-barred.
Nor would it be barred, if, after B had’ occupied, the land ten . years and abandoned it, C, without the privity of B,had entered and occupied it under a pa» tent to himself for ten years, or even, nineteen years, (j would not in such a case be benefited by the occupancy by B. B could not be protected by his ten years possession. Ccoujd .notbe protected by his. fifteen, or even nineteen jears possession. A’s right of entry cannot have been barred, then, unless the posses» sion by B, and that by C, can be blended so as to make one continuous and entire occupancy. This cannot be done, unless by contract or otherwise, C had acquired the benefit of B’s possession. If C held adr *525 tersely to B as well as to A, and bad not derived his possession from JL>, we should be at a loss for any reason for deciding that he could plead B's possession.in bar of A’s right; unless that possession alone had been continued long enough to constitute a bar of itself; then. It might be pleaded as an outstanding right. The cases in I Marshall, 3, and in II lb. 6*20, arenot in conflict, but are in perfect accord with this view. If C had occupied land nineteen years, and then B had occupied it adversely to € for one year, would A be barred?- He was not barred by C, because his cause of'action against him had not accrued twenty years. Iii's cause of action against B, having existed only one year would not be barred. But if B held under C, or had, in any way, acquired the benefit of C’s right or of his occupancy, then his possession would only be a continuation of B’s possession, and the cause of action by A against C, would be transferred toB, in consequence of such privity. In such a case, if B, be dis-seized by A, he may be entitled to restitution by a judgment in ejectment founded on his occupancy for twenty years; that is, his own personal occupancy for one year, and that of C for nineteen years. But his one year would not benefit him, unless there bad been privity between him andC; and therefore, if he had not acquired the possession from C, he could not evict A in an action of ejectment in consequence of twenty years possession.
T• T. Crittenden* fovplaintiff; Piu>hl„ for defendants.
But, ns before stated, there is not the semblance oí’ proof in this case, that the plaintiff had a pretence of title, or held adversely to any right.
We consider the case a very' clear one, especially after three successive verdicts.
Judgment affirmed.